UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
3:22-cv-60-MOC-SCR

| CLARENCE DELANO BELTON, JR., | ) |
|---|---|
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) |
| | ) ORDER |
| CITY OF CHARLOTTE, et al., | ) |
| | ) |
| Defendants. | ) |

**THIS MATTER** comes before the Court on a Motion for Summary Judgment by Defendant Heather Loveridge ("Loveridge"), (Doc. No. 21), and on a Motion for Summary Judgment by the City of Charlotte ("City"), (Doc. No. 24). The Court held a hearing on the motions on June 22, 2023. This matter is ripe for disposition.

For the following reasons, the Court denies Defendants' summary judgment motions.

## I. BACKGROUND

### A. PROCEDURAL BACKGROUND

This lawsuit arises out of the shooting by one police officer, Defendant Heather Loveridge, of another police officer, Plaintiff Clarence Belton, while the officers were attempting to execute a search warrant on a known violent criminal in Charlotte, North Carolina. Plaintiff filed this action on December 20, 2021, in the North Carolina General Court of Justice, Mecklenburg County Superior Court, naming as Defendants Officer Loveridge and the City of

1

Charlotte. (Doc. No. 1-1). Plaintiff then filed an Amended Complaint on January 18, 2022. (Id.). Defendant removed the action to this Court on February 11, 2022. (Doc. No. 1). Plaintiff brings the following claims: (1) excessive use of force in violation of the Fourth Amendment to the U.S. Constitution against Loveridge (First Cause of Action); (2) negligence against Loveridge and City (Second Cause of Action); (3) assault and battery against Loveridge (Third Cause of Action); and (4) negligent infliction of emotional distress against Loveridge and the City (Fourth Cause of Action). Both Defendants have filed motions for summary judgment.

## B. UNDISPUTED FACTS

Plaintiff was hired as a police officer with the Gastonia Police Department in 2011 and later began serving as a Task Force Officer ("TFO") with the FBI. (Pl.'s Dep., Pl.'s Ex. 1 at pp. 14, 20). In October 2019, Plaintiff was working on an investigation with the FBI's Safe Streets Task Force, along with other members of his team. (Pl.'s Ex. 1 at p. 20). Together, the TFOs, including Plaintiff, planned and prepared to execute a search warrant in Charlotte at the home of Larry McConneyhead ("McConneyhead") on November 1, 2019. (Pl.'s Ex. 1 at p. 32). TFO Brogdon obtained a federal search warrant on October 22, 2019. (Pl.'s Ex. 1 at p. 110; Def. Ex. 2).

On November 1, 2019, TFO Brogdon contacted the Charlotte-Mecklenburg Police Department ("CMPD") and requested the department send a marked patrol unit to provide blue lights in the area during the execution of the search warrant. (CMPD Sergeant Hoppe's Dep., Ex. 2 at p. 9). CMPD Sergeant James Hoppe selected and sent Defendant Officer Heather Loveridge and Officer Nicholas Pezzeca, in a marked unit, to meet with TFO Brogdon. (Pl.'s Ex. 2 at p. 10; Def. Ex. 4 ¶ 7; Def. Ex. 5 ¶ 5). At the meeting, TFO Brogdon told Defendant Loveridge and Officer Pezzeca that they were to assist the TFOs with detaining McConneyhead should he come

2

outside or get into his car. (Def. Ex. 5 at ¶ 7). After the meeting, Defendant Loveridge and Officer Pezzeca waited in their patrol car around the corner from the subject location. (Def. Ex. 4 ¶ 11; Def. Ex. 5 ¶ 9).

Meanwhile, Plaintiff and TFO Derick Meek were parked in sight of McConneyhead's house to wait for McConneyhead to come outside. (Pl.'s Ex. 1 at pp. 54, 115–16). TFOs Joshua Hedrick and Justin Padgett were parked nearby. (Pl.'s Ex. 1 at p. 58). Plaintiff and TFO Meek saw McConneyhead come out of his lit garage to the street, and Plaintiff and TFO Meek pulled up and attempted to stop McConneyhead outside. (Pl.'s Ex. 1 at pp. 56–57; Def. Ex. 7; Def. Ex. 8). McConneyhead did not comply with the TFOs' request to stop; instead, he ran inside his lit garage and into the house. (Pl.'s Ex. 1 at p. 57; Def. Ex. 8). Plaintiff called out over the radio, "He's running!" Plaintiff and TFO Meek gave chase but paused inside the lit garage to wait for backup when McConneyhead shut the door into the house. (Pl.'s Ex. 1 at p. 130; Ex. 3, CPI security video).

TFO Hedrick came into the lit garage, as did Defendant Loveridge. (Ex. 1 at p. 130; Ex. 3; Def. Ex. 5 ¶ 12; Def. Ex. 7). Officer Pezzeca came near the threshold of the garage, saw Plaintiff inside, and went to the back of the house to provide cover. (Ex. 4, video from Pezzeca's body camera; Def. Ex. 5 ¶¶ 8, 10; Def. Ex. 7). The TFOs, including Plaintiff, prepared to ram the door and enter the house. (Ex. At 1 pp. 131–32; Def. Ex. 6B at p. 1). TFO Meek went to retrieve the ram, leaving Plaintiff, TFO Hendrick, and Defendant Loveridge in the lit garage. (Def. Ex. 6B at pp. 1–2; Ex. 3).

Defendant Loveridge walked further inside the garage, near the door, just a few feet from Plaintiff. Plaintiff was wearing a bullet proof vest with the word "POLICE" across the front, but he was wearing a blue jacket over the vest. (Ex. 3; Def. Ex. 5, ¶ 8). When TFO Meek returned

3

with the ram, TFO Padgett also entered the garage. (Ex. 3). TFOs Meek, Hendrick, Padgett and Plaintiff set up to ram the door leading into the house. (Ex. 1 at p. 69; Ex. 3). Defendant Loveridge stepped to the driveway at the threshold of the garage, looking toward the front door of the house. (Ex. 3). Plaintiff knocked and announced, "Police, Search Warrant" and TFO Meek hit the door with the ram, opening it. (Ex. 1 at pp. 67, 95; Def. Ex. 6B at p. 2). A woman stood inside the dark interior pointing a silver revolver at them. (Ex. 1 at p. 62; Def. Ex. 6B at p. 2). Plaintiff yelled "Gun, gun!" and fired one shot at the woman. Plaintiff then felt his right arm go numb. (Ex. 1 at pp. 63, 136). Plaintiff turned to step toward the exit of the garage and fell to the ground. (Ex. 1 at pp. 63–64, 137). TFO Hedrick fired eight shots toward the woman holding the gun and the wall area around the door. (Def. Ex. 6B at p. 2).

TFO Meek moved along the side wall to exit the garage as gunfire was exchanged. (Ex. 3). TFO Padgett also backed out of the garage during the exchange. (Ex. 3). Defendant Loveridge did not take cover. (Ex. 3). Instead, she began to fire her weapon at Plaintiff as he crawled on the floor toward the garage exit. (Id.). Defendant Loveridge continued to shoot at Plaintiff as he neared the threshold of the garage until she heard someone yell, 'He's a cop!" (Ex. 3; Def. Ex. 4 at ¶ 13). Loveridge fired at Plaintiff fourteen times. (Ex. 3; Ex. 5 at p. 7 (SBI Synopsis). Plaintiff suffered multiple gunshot wounds to both arms, requiring multiple surgeries and leaving him with permanent injuries that prevent him from being a police officer. (Ex. 6, excerpts from Plaintiff's medical records).

## II. STANDARD OF REVIEW

Summary judgment shall be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). A factual dispute is genuine "if the evidence is such that a reasonable jury could return a

4

verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A fact is material only if it might affect the outcome of the suit under governing law. Id.

The movant has the "initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact." Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986) (internal citations omitted).

Once this initial burden is met, the burden shifts to the nonmoving party. The nonmoving party "must set forth specific facts showing that there is a genuine issue for trial." Id. at 322 n.3. The nonmoving party may not rely upon mere allegations or denials of allegations in his pleadings to defeat a motion for summary judgment. Id. at 324. The nonmoving party must present sufficient evidence from which "a reasonable jury could return a verdict for the nonmoving party." Anderson, 477 U.S. at 248; accord Sylvia Dev. Corp. v. Calvert Cty., Md., 48 F.3d 810, 818 (4th Cir. 1995).

In reviewing a motion for summary judgment, the Court must consider the evidence and all reasonable inferences drawn therefrom in the light most favorable to the non-moving party. Henry v. Purnell, 652 F.3d 524, 531 (4th Cir. 2011). If a genuine issue of material fact exists, the motion for summary judgment must be denied. Gray v. Spillman, 925 F.2d 90, 95 (4th Cir. 1991). In determining whether a genuine issue exists, reasonable inferences from the record must be drawn in plaintiff's favor after reviewing the facts in the light most favorable to the plaintiff. See Waterman v. Batton, 393 F.3d 471, 473 (4th Cir. 2005) (citing Gray-Hopkins v. Prince George's Cnty., 309 F.3d 224, 229 (4th Cir. 2002)).

## III. DISCUSSION

### A. PLAINTIFF'S EXCESSIVE FORCE CLAIM AGAINST DEFENDANT LOVERIDGE

Plaintiff brings an excessive force claim against Defendant Loveridge. Excessive force claims against law enforcement officers are analyzed under the Fourth Amendment's reasonableness standard. Graham v. Connor, 490 U.S. 386, 395 (1989). The question under the totality of the circumstances is "whether a reasonable officer in the same circumstances would have concluded that a threat existed justifying the particular use of force." Anderson v. Russell, 247 F.3d 125, 129 (4th Cir. 2001). In determining whether a reasonable officer on the scene would have used force, courts are to consider "the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." Graham, 490 U.S. at 396.

An officer may reasonably "use deadly force when the officer has 'probable cause to believe that the suspect poses a threat of serious physical harm, either to the officer or others.'" Anderson, 247 F.3d at 129 (quoting Tennessee v. Garner, 471 U.S. 1, 11 (1985)). The deadly force test is thus a two-part test: (i) the officer must reasonably believe ("probable cause") that (ii) the suspect is currently posing a significant threat of harm to others. Id. Accordingly, in a deadly force case, the precise legal question is whether an objectively reasonable officer would have believed the suspect posed a serious threat to his safety or the safety of others. See Garner, 471 U.S. at 12; Graham v. Connor, 490 U.S. 386, 395; Elliott v. Leavitt, 99 F.3d 640, 644 (4th Cir. 1996).

"[T]he 'reasonableness' of a particular use of force must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." Graham, 490

U.S. at 396, 109 S. Ct. 1865. Courts must consider "that police officers are often forced to make split-second judgments—in circumstances that are tense, uncertain, and rapidly evolving." Id. at 397. Courts are also instructed to focus "on the circumstances at the moment force was used and on the fact that officers on the beat are not afforded the luxury of armchair reflection." Elliott v. Leavitt, 99 F.3d 640, 642 (4th Cir. 1996).

Here the Court finds that there are genuine issues of disputed material fact regarding the circumstances under which Defendant Loveridge used deadly force against Plaintiff. The parties dispute how well lit the garage was, what exactly Loveridge could see before she started shooting at Plaintiff, and whether Loveridge's bullets (as opposed to bullets from the first shooter) caused Plaintiff's injuries. Plaintiff contends that the evidence, including body camera footage and home security footage, shows that Defendant Loveridge had the opportunity to see Plaintiff before the door was breached. Loveridge denies that the evidence shows this. Plaintiff further contends that the evidence shows that Loveridge could see that Plaintiff was a law enforcement officer before she shot at him. Loveridge denies that the evidence shows this, and she notes that Plaintiff's police vest was obscured by the jacket he was wearing over it. The Court finds that these disputed facts are material to the excessive force claim. In sum, the Court finds that disputed issues of material fact exist, and summary judgment is not appropriate as to the excessive force claim.

Defendant Loveridge has also asserted qualified immunity as a bar to Plaintiff's excessive force claim. Qualified immunity protects government officials "from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Pearson v. Callahan, 555 U.S. 223, 231 (2009) (quoting Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982)). Officials who are sued for civil

7

damages are entitled to qualified immunity unless (1) the complaint sufficiently alleges a violation of a constitutional right, and (2) the right at issue, defined at the appropriate level of generality, was "clearly established" at the time of the alleged misconduct. Doe ex rel. Johnson v. S.C. Dep't of Soc. Servs., 597 F.3d 163, 169 (4th Cir. 2010).

A constitutional right is clearly established where "its contours [are] sufficiently clear that a reasonable official would understand that what he is doing violates that right." Hope v. Pelzer, 536 U.S. 730, 739 (2002) (internal quotation marks omitted). "[I]f there is a legitimate question as to whether an official's conduct constitutes a constitutional violation, the official is entitled to qualified immunity." Martin v. Saint Mary's Dep't of Soc. Servs., 346 F.3d 502, 505 (4th Cir. 2003) (internal quotation marks omitted). It is within the court's discretion to decide "which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand." Doe ex rel. Johnson, 597 F.3d at 169 (quoting Pearson, 555 U.S. at 236).

Qualified immunity does not alter the ordinary rules applicable to summary judgment proceedings. Pritchett v. Alford, 973 F.2d 307, 313 (1992). The assertion of a qualified immunity defense "does not mean . . . that summary judgment doctrine is to be skewed from its ordinary operation to give special substantive favor to the defense . . ." Id. In Section 1983 law enforcement cases, a court should deny summary judgment on qualified immunity when a genuine issue of material fact exists regarding the circumstances under which the officer detained or used force against the plaintiff. See Knibbs v. Momphard, 30 F.4th 200, 216 (4th Cir. 2022) (finding that "at the summary judgment stage, genuine disputed issues of material fact preclude finding that [the decedent] posed an objectively immediate threat to [the defendant police officer's] life as a matter of law" and finding further that disputed facts also precluded a

finding of qualified immunity).

Here, disputed issues of material fact also preclude a finding of qualified immunity on summary judgment. Thus, the Court declines to grant summary judgment to Defendant Loveridge based on qualified immunity.

### B. PLAINTIFF'S STATE LAW CLAIMS

#### i. Negligence Claim as to Both Defendants

Plaintiff further asserts that Defendant Loveridge's conduct was negligent, and that her negligence caused Plaintiff's injuries. Defendants, in turn, have alleged that Plaintiff was contributorily negligent. The Court finds genuine disputes of material fact as to this state law claim. Consequently, the Court denies the summary judgment motions as to this claim.[1]

### C. Assault and Battery Claim against Loveridge

Where a plaintiff's Section 1983 excessive force claim survives summary judgment, companion state law assault and battery claims also survive. Rowland v. Perry, 41 F.3d 167, 174 (4th Cir. 1994) (applying North Carolina law) (where "a jury could find that no reasonable officer could have believed his conduct to be lawful in light of the circumstances known to him at the time[,] [a] parallel state law claim of assault and battery is subsumed within the federal excessive force claim and so goes forward as well."). Accordingly, Defendants' motion for summary judgment on Plaintiff's assault and battery claims are also denied.

---

[1] Defendant Loveridge argues that she should be entitled to public official immunity on Plaintiff's state law claims. However, the state law defense of public official immunity "is unavailable to officers who violate clearly established rights." Bailey v. Kennedy, 349 F.3d 731, 742 (4th Cir. 2003); Because there is a genuine dispute of material fact as to whether Defendant violated Plaintiff's clearly established rights, Defendant Loveridge is not entitled to public official immunity on summary judgment.

9

### D. Negligent Infliction of Emotional Distress as to Both Defendants

Defendants argue that Plaintiff's negligent infliction of emotional distress ("NIED") claim should be dismissed because no evidence has forecast extreme or outrageous conduct by Defendant. However, extreme or outrageous conduct is not an element of NIED. Instead, "a plaintiff must allege that (1) the defendant negligently engaged in conduct, (2) it was reasonably foreseeable that such conduct would cause the plaintiff severe emotional distress . . . , and (3) the conduct did in fact cause the plaintiff severe emotional distress." Johnson v. Ruark Obstetrics & Gynecology Assocs., P.A., 327 N.C. 283, 304, 395 S.E.2d 85, 97 (1990). Because material fact issues regarding the shooting remain disputed, the Court denies Defendants' summary judgment motions as to this claim.

Finally, Defendants also argue for summary judgment on Plaintiff's punitive damages claim. Based the Court is denying summary judgment as to the substantive claims, Plaintiff's punitive damages claim also survives.

### IV. CONCLUSION

In sum, for the reasons stated herein, Defendants' summary judgment motions are denied. This matter shall proceed to trial.

**IT IS, THEREFORE, ORDERED** that:

1. Defendants' Motions for Summary Judgment, (Doc. Nos. 21, 24), are **DENIED**.
2. This matter shall proceed to trial.

Signed: September 26, 2023

Max O. Cogburn Jr
United States District Judge