IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
3:22-CV-60-MOC-SCR

CLARENCE DELANO BELTON, JR.,  )
                              )
                              )
    Plaintiff,                )
                              )
    v.                        )        **PLAINTIFF'S REPLY**
                              )
CITY OF CHARLOTTE and         )
HEATHER LOVERIDGE,            )
individually and officially,  )
                              )
    Defendants.               )
                              )

Plaintiff, by and through undersigned counsel, respectfully submits this reply to Defendant's response brief.

**I.  Defendant Ignores the Standard for Summary Judgment.**

First and foremost, Defendant's brief fails to acknowledge that at summary judgment this Court must "view the facts in the light most favorable to the nonmoving party." *Vathekan v. Prince George's County, Maryland*, 154 F.3d 173, 175 (4th Cir. 1998). This Court must also resolve all disputes of fact in favor of the non-movant. *Tolan v. Cotton*, 572 U.S. 650, 657 (2014). Plaintiff has set forth "specific facts showing that there is a genuine issue for trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Defendant ignores the requirement that the Court must consider the evidence and all reasonable inferences drawn therefrom in the light most favorable to the non-moving party. *Henry v. Purnell*, 652 F.3d 524, 531 (4th Cir. 2022). Instead,

1

Defendant bases her argument on the improper resolution of disputed issues in her own favor. The Court is simply not permitted to ignore the summary judgment standard — it must make findings as to the disputes of material fact and then apply the mandatory presumption that the jury will resolve all factual disputes in Plaintiff's favor. Then the Court must determine whether an objectively reasonable officer would have perceived an *imminent* threat of death or serious bodily injury to justify use of deadly force, (*See Waterman v. Batton*, 393 F.3d 471, 477 (4th Cir. 2005) (quoting *Garner*, 471 U.S. at 11, 105 S.Ct. 1694) or whether there are disputed issues of fact that a jury has to resolve to answer that question. (*See Henry* at 531). This court found disputed issues of fact in its prior order, those remain, therefore the Court should reaffirm those findings. (Doc. 36 p. 7).

## II. *McLenagan* and *Milstead* are Not Dispositive on These Facts.

Defendant Loveridge insists that this case is indistinguishable from and thus controlled by *McLenagan v. Karnes*, 27 F.3d 1002 (4th Cir. 1994) and *Milstead v. Kibler*, 243 F.3d 157 (4th 2001). In doing so, Defendant misses that the material facts in those two cases were not disputed. Defendant states, "in both decisions, Fourth Circuit [sic] found that a reasonable officer would have reason to fear for their own safety when another person, who could not be clearly <u>identified as a friend</u>, <u>came at</u> the officer seconds after the shooting or threat. Loveridge faced this precise scenario here." (Doc. 65, pp 2-3) (emphasis added). In both *McLenagan* and *Milstead* the facts were undisputed that the person was *charging* at the shooting officer in a way that

2

made the perceived threat imminent and reasonable, though ultimately mistaken. That is not the case here.

The material issues in this case include the following: whether it would have been clear Plaintiff was not the suspect, the direction Plaintiff was crawling — whether "at" Defendant or at an angle away from Defendant, whether it would have been clear Plaintiff was unarmed, whether it would have been clear Plaintiff was injured, and whether Defendant had opportunity to exercise nonlethal use of force. These disputes of fact are subsumed in the disputed facts originally stated by the Court: How well lit the garage was and what exactly Loveridge could see before she started shooting at Plaintiff. (Doc. 36 p. 7).

Reliance on *McLenagan* and *Milstead* requires that the Court first find that Plaintiff "came at" Defendant in a fashion likely to overtake the officer quickly if the officer did not respond. Competent evidence from the CPI garage video footage (Doc. 26-3) supports the opposite, that that Plaintiff was not on foot and did <u>not</u> "come at" Defendant. Defendant did not suffer the same force of urgency to react by using deadly force in a split second. Here, Defendant had time and opportunity to take non-lethal action.

Additionally, reliance on *McLenagan* requires that the Court find that a reasonable officer in Defendant's position could not have "identified as a friend" the person whom she shot. Again, competent video evidence supports that Defendant knew what Plaintiff looked like after she saw him presenting, behaving and interacting as a police officer. (Doc. 26-3; Doc. 26-5 sealed video footage). Defendant's

3

view allowed her to see that Plaintiff was not a physical match to the suspect. Together these facts provide for the conclusion that the misidentification was unreasonable and forecloses application of the *McLenagan* decision.

Finally, in both *McLenegan* and *Milstead,* the officers had no opportunity to directly observe the victim for enough time to determine that they were unarmed. In this case, the evidence not only supports the conclusion that it was apparent that Plaintiff did not have a gun, but it also supports the conclusion that Defendant had the opportunity and viewpoint to make that assessment. The officers in *McLenegan* and *Milstead,* in contrast, had no such opportunity.

### III. Defendant's Arguments Recognize the Disputed Facts for Which This Court Must Make Findings.

Although Defendant's brief identifies the material questions of fact upon which this case turns, she misapplies the standard when she resolves these facts in her own favor, in effort to argue there are undisputed facts under which an officer would perceive an imminent threat.

All of these disputed facts: whether it would have been clear Plaintiff was not the suspect, the direction Plaintiff was crawling — whether "at" Defendant or at an angle away from Defendant, whether it would have been clear Plaintiff was unarmed, whether it would have been clear Plaintiff was injured, and whether Defendant had opportunity to exercise nonlethal use of force, are material in determining whether a reasonable officer would perceive Plaintiff posed a significant risk of imminent death or serious bodily injury to justify shooting Plaintiff. *Stanton v. Elliott*, 25 F.4th 227, 237 (4th Cir. 2022). Defendant is not arguing that it would be reasonable to shoot

4

even if the jury could find a reasonable officer could recognize Belton was not the suspect or could see Belton was *not* crawling directly at her and was *not* armed. Defendant is insisting that there is no dispute and that only the opposite facts apply. But there is evidence from which a jury could find just that — that a reasonable officer could have seen Belton was not the suspect, was not armed and/or was not moving towards Defendant. Since Defendant does not argue or contend that a jury could make those factual findings, the argument does not address the question before this court.

### A. A Reasonable Officer Could Have Seen Plaintiff was Not the Suspect.

Defendant characterizes Plaintiff as "an unknown person," "an unidentified person," "an unknown suspect," "an unidentified man," and a person who "could not be identified." (Doc. 65 pp 3-6, 17, 22-23). Defendant thus contends that identity is a material issue. Again, Defendant conflates both the issues and the applicable standard. Here, where a jury could find that a reasonable officer would recognize that Plaintiff was not the suspect in these circumstances, then it also follows that Plaintiff was not posing an imminent and serious threat of harm to Defendant and "the jury could return a verdict for the non-moving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

Furthermore, the evidence before the court does not support that such a belief is reasonable. The CPI and body worn camera video footage in the record holds abundant evidence that undermines Defendant's claim that she reasonably mistook Plaintiff for the suspect. (Doc. 26-3; Doc. 26-5, sealed videos). Video footage

5

establishes that Defendant had a well-lit, direct, and unobstructed view of Plaintiff prior to entry into the house. (*Id.*) Other than race and gender, Plaintiff's appearance does not match the subject and because Defendant had the advantage of having a clear view of the Plaintiff, behaving as a police officer with the other officers executing the search warrant, misidentification of Plaintiff as the suspect was unreasonable. (*Id.*) "In-the-moment facts cannot be hermetically sealed off from the context in which they arose." *Barnes v. Felix,* No. 23-1239, 2025 WL 1401083, at *5 (U.S. May 15, 2025). Defendant's misidentification cannot be assessed by only what she saw while she was firing.

Defendant also attempts to bolster her mistaken identity contention by repeatedly asserting that Plaintiff "matched the suspect's description." (Doc. 65, pp 6, 12). This contention is factually incorrect, and Defendant fails to cite the evidence that dictates the match she claims. In fact, Defendant understood that the suspect was, "over 6 foot, bigger guy, 280 pounds" (Doc. 21-5, ¶ 10), conjuring imagery of physical size that simply does not match Plaintiff's physical size as evidenced in the video footage. Defendant's clear view of Plaintiff before the shooting, her view of Plaintiff when she decided to initially shoot him and while she continued to shoot him, coupled with the objective physical mismatch between Plaintiff and the suspect description, subvert Defendant's claim of reasonable misidentification.

Even if the Court were to find that Defendant's misidentification of Plaintiff was reasonable, Defendant has failed to show that a reasonable officer would find Plaintiff posed an *imminent threat* of death or serious injury to her or others as he

crawled out of the garage with no weapon in his bleeding arms. The key undisputed fact is that Belton was crawling on the ground, not charging or running toward Loveridge, and the key disputed fact is that a jury could find the fact he was unarmed and not a threat, despite Defendant's claims to the contrary.

### B. Whether Plaintiff "Came At" Defendant.

Defendant contends that Plaintiff "came at" her and was "crawling out of the garage toward" Defendant before she shot him. (Doc. 65, pp 3, 13, 16). Plaintiff's Exhibit #3, the garage video, (Doc 26-3) and Defendant's Exhibit 12, the CPI photos, (Doc. 21-13) contradict Defendant's contention. Plaintiff did not close the distance between himself and Defendant; to the contrary, that distance actually increased before and during the fourteen shots Defendant discharged. (*Id*.). Further, as captured in the video footage, Plaintiff moved in a consistent and straight line, parallel with and nearly against the garage wall, while Defendant stepped away and across the driveway from Plaintiff. (Doc 26-3). Even if Defendant had not stepped aside, Plaintiff's straight path would not have intersected with Defendant. At summary judgment, this Court must therefore conclude that Plaintiff did not "come at" Defendant as he crawled on the ground.

### C. Whether Plaintiff Was Unarmed.

Defendant concedes that Plaintiff was actually unarmed. (Doc. 65, p 3). Further, competent evidence shows that Plaintiff appeared unarmed. As Plaintiff did not actually have a gun, any person with a view of him could see that he was unarmed as Defendant did. The CPI garage video footage is the best evidence capturing

7

Defendant's perspective and ability to view Plaintiff was unarmed as he crawled on the ground.

Defendant has never argued Plaintiff was armed or that he made motions indicating he was carrying anything, much less a gun. Defendant asserts that the "chaotic and uncertain situation" alone justifies a belief that any person on the scene was armed. (Doc. 65, p 19). However, Defendant provides no authority for the Court to adopt such a presumption. This Court must accept that Defendant could see Plaintiff was unarmed but instead responded as though he was armed.

### D. <u>Whether Plaintiff Was Injured and Partially Incapacitated.</u>

Defendant asserts that "there is no supporting evidence in the record" for the conclusion that she "knew that Plaintiff was injured." (Doc. 65, p 12). First, the issue is not whether Defendant herself actually had this knowledge, but rather what a reasonable officer in her position would have perceived. *Graham v. Connor*, 490 U.S. 386, 397 (1989). Second, the CPI garage video footage again provides the best evidence concerning this disputed fact. (Doc 26-3). The uninjured officers in the garage fled, running rapidly, crouching but on foot, following the volley of gunfire. In contrast, Plaintiff's exit was not rapid, as he was relegated to crawling and even in the midst of Defendant's continued gunfire as well as after he was struck by Defendant's bullets, Plaintiff remained on the ground, unable to stand, even to try to avoid being repeatedly shot. Deducing the fact that the person crawling on the ground under the circumstances during these moments, was injured, is a natural and obvious inference. Finally, Plaintiff was in fact injured. Therefore, anyone who had the view

8

of him in the lit garage, as Defendant did, could see that Plaintiff was injured. All of this competent evidence supports the finding that Plaintiff's injuries were apparent and notably, Defendant does not dispute that an injured person poses a lower potential threat resulting in markedly lower imminence than one who is uninjured.

### E. Whether Defendant Had Only A "Split Second" To Act.

Defendant relies heavily on the idea of a "split second" decision. (Doc. 65, pp 5, 13, 17, 19-20). Defendant likewise refers at least eleven times to the shooting occurring within "seconds" of the initial gunfire. (Doc. 65, pp 3-5, 11, 13, 16, 22). Defendant thus recognizes time as a material issue of fact.

Significant evidence supports the conclusion, however, that although there was ample time for Defendant to respond and decide on an action other than shooting Plaintiff, it is unrefuted that Defendant responded to hearing gunfire by almost immediately shooting at the person crawling on the ground. Her decision to immediately begin shooting was based on her fear from hearing the gunshots, not on a reasonable belief that the unarmed person crawling on the ground posed and imminent deadly threat. The CPI garage video footage shows Defendant had both time and opportunity to back away and she <u>did</u> in fact successfully back away. (Doc. 26-3). In so doing, Defendant significantly increased the distance between herself and Plaintiff. (*Id.*). The video footage shows that Plaintiff never changed his direction to move toward Defendant and that Defendant had even more space to continue to put distance between them, including to a position behind multiple unoccupied vehicles parked in the driveway. (*Id.*). Defendant could see other officers retreating and could

9

have taken the very same action as there was no threat coming at her or obstructions preventing the same retreat. Defendant failed to avail herself of the time and abundant space to retreat or to the coverage afforded by the parked vehicles in the driveway. Instead, Defendant acted in a split second and opted to shoot Plaintiff as he crawled on the ground, despite the absence of threat, imminent or otherwise.

Even if the Court determined that it was undisputed that a reasonable officer would find it plausible to believe Plaintiff was the suspect and was armed under these facts, there are a litany of cases holding that absent a threatening movement, even if one presumes the suspect is armed, a jury can conclude that the suspect does not present a threat of imminent harm and summary judgment is improper. S*ee Pena v. Porter*, 316 F.App'x 303 (4th Cir. 2009) (unpublished but cited in *Cooper*) (Police shot a person coming out of his mobile home with a gun to investigate noises the police had made while conducting a sweep of the neighborhood.); *Cooper v. Sheehan*, 735 F.3d 153 (4th Cir. 2013) (Officers shot Cooper, without warning, when he emerged from his home with a shotgun, pointed at the ground.); *Hensley on behalf of N. Carolina v. Price*, 876 F. 3d 573 (4th Cir. 2017) (Deputies had no reason to suspect that Hensley posed an immediate threat when they shot him, other than the fact that he was holding a gun that was not pointed at them, but at the ground.); *Estate of Jones by Jones v. City of Martinsburg, W. Virginia*, 961 F.3d 661 (4th Cir. 2020), as amended (June 10, 2020) (Questions of fact remained as to whether suspect was secured and was incapacitated when he was shot.); *Knibbs v. Momphard*, 30 F.4th 200 (4th Cir. 2022) (It was clearly established that officer could not use deadly force

against homeowner who had a weapon inside his home but did not point it at the officer or otherwise threaten him with deadly harm); *Franklin v. City of Charlotte*, 64 F.4th 519 (4th Cir. 2023) (Police shot man as he attempted to follow their commands to simultaneously put his hands up and drop his weapon but made no motion threatening to officers.); *Aleman v. City of Charlotte*, 80 F.4th 264 (4th Cir. 2023) (Police shot and killed Spanish speaking man who didn't follow their English commands and instead raised his hands overheard while holding his pistol but never pointed it or threatened the officers with it.). As the Fourth Circuit held in *Cooper* and restated in *Aleman,* these were cases where the gun was real, but the threat was not. Here, there was no gun and there was no threat.

## IV. Defendant Attempts to Distinguish Plaintiff's Cases While Again Relying on Facts to which She is Not Entitled.

This Court has been tasked with articulating Plaintiff's clearly established rights. This analysis requires comparing the facts of this case to the facts of prior cases where the Fourth Circuit has found the plaintiff's clearly established rights were violated. *Jones v. Buchanan*, 325 F.3d 520, 531 (4th Cir. 2003). Plaintiff's opening brief cited *Clem v Corbeau*, 284 F.3d 543, (4th Cir. 2002) for the following clearly established right: "a person has a right not to be shot, when it is apparent that he is unarmed and injured, and when he is not moving rapidly towards the officer.*"* Defendant first argues that *Clem* does not expressly state that a person has a right not to be shot when he is "not rapidly moving towards the officer." Defendant cites no authority, however, for the contention that a case only establishes a right clearly to the extent that it sums up that right in a sentence. To the contrary, clearly

11

established rights depend on whether the "facts of a prior case" given notice of the right, not whether a court opinion includes a concise sentence of that right. *Jones,* 325 F.3d at 531 (emphasis added).

The facts of *Clem* provide that notice. Defendant argues in a conclusory manner that "in *Clem*, there was no objective basis upon which an officer could have perceived a threat" which "stands in stark contrast to the obviously dire and life-threatening circumstances faced by Officer Loveridge." (Doc. 65, p 13). Despite Defendant's assertion, she provides no undisputed evidence in the instant case which made Plaintiff a greater apparent threat than the victim in *Clem*.

In *Clem*, like in the case at bar, the evidence supported findings that the officer could see that the victim was unarmed, injured, and moving slowly. Also like in the case at bar, the defendant-officer in *Clem* pointed to contrary evidence. He alleged that he had cause to believe the victim was armed, that the victim had recovered from being pepper sprayed, and that he charged the officer. *Clem v. Corbeau*, 284 F.3d at 549-550 (4th Cir. 2002). That officer's contrary evidence was no more dispositive at summary judgment than Defendant's contrary evidence is here. Plaintiff has done as is required at summary judgment, to forecast competent evidence supporting he was unarmed, injured, and was not approaching Defendant.

Defendant also attempts to distinguish *Brockington v. Boykins,* 637 F.3d 503 (4th Cir. 2011) and the instant case by pointing out an insignificant factual difference, arguing that the victims were "not lying on the ground in the same manner." (Doc. 65, p 14). Defendant does not explain how a person can lay on the ground, "face down"

as Defendant concedes, while presenting an imminent and serious threat. Defendant offers no explanation for how Plaintiff was more obviously dangerous than the injured victim in *Brockingham.*

Defendant's argument opposing the application of the decision in *Stanton v. Elliott,* 25 F.4th 227 (4th Cir. 2022) repeats her erroneous application of the standard by which she urges this Court to resolve disputes in her favor. Defendant contends that a reasonable officer in the instant case, unlike in *Stanton*, "could have believed Belton was still armed." She also repeats the claim that Plaintiff was crawling <u>towards</u> Defendant. (Doc. 65, p 16). Competent evidence supports the finding that Defendant could see that Plaintiff was unarmed and was not approaching Defendant. Defendant is not entitled to contrary inferences in order to distinguish *Stanton*.

More fundamentally, Defendant does not contest the central facts which clearly establish the right in *Stanton*: an officer cannot shoot a suspect in the back who is apparently unarmed and running away. Competent evidence supports findings of fact which are sufficiently similar to *Stanton* to "give notice" that a shooting of a person who is not exhibiting a threat would be unreasonable. Plaintiff, like the victim in *Stanton*, was not facing his shooter and was not shot in front. Both Stanton and Plaintiff were apparently unarmed, and neither victim was approaching their respective shooter. In the case at bar, Plaintiff was trying to exit, just like the victim in *Stanton*. Contesting these matching facts is impossible, making Stanton indistinguishable.

## V. Defendant's Reliance on "Blue on Blue" Cases is Erroneous.

Defendant cites a series of cases colloquially referred to as "Blue on Blue" cases. None of the decisions cited are from the Fourth Circuit. *Jones v. Shivers*, 697 Fed.Appx 334 (5th Cir. 2017) and *Vaughn v. City of Orlando*, 413 Fed. Appx. 175 (11th Cir. 2011) fail to have precedential value as they are predicated on the grounds in which the shooting officer reasonably perceived the misidentified a fellow officer to present an imminent threat of lethal force. Here, the evidence construed in the light most favorable to Plaintiff contravenes that Plaintiff presented an imminent deadly threat to Defendant or the other officers.

## VI. Conclusion

*Clem* and *Stanton* clearly establish a 4th Amendment right for a victim not to be shot when he is unarmed, injured, and not approaching the officer. Competent evidence exists that Plaintiff possessed all of these characteristics. Plaintiff's 4th Amendment right was therefore clearly established. This Court cited *Knibbs v. Momphard*, 30 F. 4th 200, 216 (4th Cir. 2022) for the premise that in law enforcement cases, summary judgment on qualified immunity should be denied when there are genuine issues of material fact regarding the circumstances surrounding the use of force. (Doc. 36, p. 8). Just as in *Knibbs*, there are genuine issues of material fact as to whether Plaintiff posed an objectively imminent threat to Defendant, as a matter of law and disputed facts preclude a finding of qualified immunity. This Court should once again, taking the disputed facts and inferences in the light most favorable to Plaintiff, deny summary judgment based upon the violation of Plaintiff's clearly

established 4th Amendment right not to be shot when he is unarmed, injured, and not approaching the officer.

This the 30th of May, 2025.

/s/ Amanda A. Mingo
Amanda A. Mingo, NC State Bar #24423
/s/ Katie C. Clary
Katie Clary, NC State Bar # 39248
*Attorneys for Plaintiff*
Rawls, Scheer, Clary, & Mingo, PLLC
2333 Randolph Road, Suite 100
Charlotte, NC 28207
T: 704-376-2300
amingo@rscmlaw.com
kclary@rscmlaw.com

## **CERTIFICATION OF COMPLIANCE WITH STANDING ORDER IN RE: USE OF ARTIFICIAL INTELLIGENCE**

The above signed counsel hereby certify that the foregoing REPLY is in compliance with the requirements set forth in this Court's Standing Order In Re: Use of Artificial Intelligence (3:24-mc-104). No artificial intelligence was employed in doing the research for the preparation of this document, with the exception of such artificial intelligence embedded in the standard on-line legal research sources Westlaw, Lexis, FastCase, and Bloomberg. Every statement and every citation to an authority contained in this document has been verified by an attorney in this case and/or a paralegal working at his/her direction as to the accuracy of the proposition for which it is offered, and the citation to authority provided.

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that on behalf of the Plaintiff, on May 30th 2025, she electronically filed the foregoing *Plaintiff's Reply,* with the Clerk of Court using the CM/ECF system, which will send electronic notification as follows:

Stephanie Webster
Cranfill Sumner LLP
P.O. Box 30787
Charlotte, NC 28230
swebster@cshlaw.com
*Attorney for Heather Loveridge*

Brett Few
Charlotte Mecklenburg Police Department
601 E. Trade Street
Charlotte, NC 28202
brett.few@cmpd.org
*Attorney for Defendant City of Charlotte*

Taylor Imperiale
Office of the City Attorney
600 East 4th Street
Charlotte, NC 28202
taylor.imperiale@charlottenc.gov
*Attorney for Defendant City of Charlotte*

/s/*Amanda A. Mingo*
Amanda A. Mingo, NC Bar #24423
Attorney for the Plaintiff
Rawls, Scheer, Clary & Mingo, PLLC
1011 E. Morehead Street, Ste. 300
Charlotte, NC  28204
T: 704-376-3200/F: 704-376-3200
amingo@rscmlaw.com