**PUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

———————

**No. 24-1945**

———————

GRAY MEDIA GROUP, INC., d/b/a WBTV,

Party-in-Interest - Appellant,

and

CLARENCE DELANO BELTON, JR.,

Plaintiff,

v.

HEATHER LOVERIDGE,

Defendant - Appellee.

———————

On Appeal from the United States District Court for the Western District of North Carolina at Charlotte.  Max O. Cogburn, Jr., District Judge.  (3:22-cv-00060-MOC-SCR)

———————

Argued:  May 7, 2025                              Decided:  September 19, 2025

———————

Before WYNN, RICHARDSON, and BERNER, Circuit Judges.

———————

Affirmed in part, vacated in part, and remanded with instructions by published opinion. Judge Berner wrote the opinion, in which Judge Wynn and Judge Richardson joined.

———————

**ARGUED:**  Lauren Patricia Russell, BALLARD SPAHR, LLP, Washington, D.C., for Appellant.  Steven Andrew Bader, CRANFILL SUMNER, LLP, Raleigh, North Carolina, for Appellee.  **ON BRIEF:**  Stephanie H. Webster, CRANFILL SUMNER LLP, Charlotte,

North Carolina, for Appellee.

———————————

2

BERNER, Circuit Judge:

The media play a crucial role in ensuring public access to judicial documents and records, thereby fostering accountability and transparency. "[T]he public and press have a qualified right of access to judicial documents and records filed in civil and criminal proceedings." *Company Doe v. Public Citizen*, 749 F.3d 246, 265 (4th Cir. 2014). This qualified right promotes both the public interest and the integrity of the judicial process. When the right arises under the First Amendment, each day that passes without disclosure could constitute a separate and cognizable infringement.

These principles of public access and the role of the media lie at the heart of this case. Clarence Belton, a North Carolina police officer, sued fellow police officer Heather Loveridge after she shot him several times during the execution of a search warrant. As one would imagine, Belton's and Loveridge's accounts of what occurred on the night of the shooting differ markedly. Video footage of the shooting offers a third perspective. Yet this video footage is unavailable for public viewing because it has been shielded indefinitely from the media and the public eye by order of the district court.

Appellant Gray Local Media Inc.,[1] doing business as WBTV, is a Charlotte-based television station that seeks access to this video footage. After covering the shooting and the events surrounding it, WBTV filed a motion to intervene in Belton's lawsuit and a motion to unseal the video. After determining that it lacked jurisdiction, the district court denied WBTV's motion to intervene. The district court then ruled in the alternative on

---

[1] Gray Media Group, Inc. changed its name to Gray Local Media, Inc.

3

WBTV's motion to unseal, denying that motion as well. It concluded that WBTV had no right of access to the video footage arising under either the common law or the First Amendment. The district court further ruled that even if WBTV could properly assert a common law or First Amendment right of access to the video, Loveridge's right to a fair trial outweighed any interest of WBTV's in its unsealing.

We agree that the district court lacked jurisdiction to hear WBTV's motion to intervene and affirm the district court's order denying that motion. We construe WBTV's appeal from the district court's denial of its motion to unseal as a petition for a writ of mandamus and grant the writ. The district court's order sealing the video footage violated the well-established rights of the press and of the public to access judicial documents and records. We therefore vacate in part and reverse in part the order of the district court and remand with instructions to unseal the video footage at issue.

## I. Background

Clarence Belton and Heather Loveridge both served as law enforcement officers in North Carolina. Belton worked for the Gastonia Police Department, and Loveridge worked for the Charlotte-Mecklenburg Police Department. On November 1, 2019, a group of law enforcement officers including Belton and Loveridge participated in carrying out a search warrant at the home of a man suspected of trafficking methamphetamine. What happened inside the residence that night is hotly contested. The parties agree that Belton and another officer used a battering ram to enter the suspect's home. There, they encountered a woman pointing a gun directly at them. Belton and several other agents fired their weapons at the

4

woman, and Belton fell to the ground during the exchange. Loveridge encountered Belton crawling on the garage floor and shot at him at least ten times. Although he survived, Belton sustained serious injuries and his career in law enforcement ended as a result.

Belton filed suit against Loveridge and the City of Charlotte in state court. He asserted four claims: 1) that Loveridge, in her individual capacity, used excessive force in violation of Belton's Fourth Amendment rights; 2) that the City and Loveridge, in her official capacity, were negligent; 3) that Loveridge, in her individual capacity, committed assault and battery; and 4) that Loveridge, in her individual and official capacities, engaged in negligent infliction of emotional distress. Loveridge removed the case to federal court on the basis of federal question jurisdiction and, following discovery, she moved for summary judgment.

Loveridge filed a motion to seal several exhibits she submitted in support of her summary judgment motion and Belton consented to the sealing motion. Those are the exhibits at issue in this case, and they include video and body camera footage of the shooting ("video exhibits"). Belton also relied on some of the video exhibits in opposing Loveridge's summary judgment motion and he too sought to seal the video exhibits with Loveridge's consent.

The governing local rules require motions to seal to state the reasons "why sealing is necessary and why there are no alternatives to filing under seal." W.D.N.C. Local R. 6.1(c)(2). Neither Loveridge's nor Belton's consent motion comported with these rules. Indeed, the motions did little more than merely restate the requirements for sealing an exhibit, with nary an explanation as to how these requirements were met. The district court

5

referred the matter to a magistrate judge who granted the consent motions and ordered the video exhibits placed under seal.

In September 2023, the district court denied Loveridge's motion for summary judgment, and Loveridge timely appealed the district court's denial of her motion for summary judgment to this court. In February 2025, a different panel of this court vacated the district court's denial of Loveridge's motion for summary judgment and remanded the case back to the district court. *Belton v. Loveridge*, 129 F.4th 271, 279–80 (4th Cir. 2025). Thus, WBTV's petition is the only matter currently pending before this court.

While Loveridge's appeal was pending before this court, Gray Local Media, Inc. (WBTV) moved to intervene in the district court proceedings for the limited purpose of unsealing the video exhibits pursuant to Federal Rule of Civil Procedure 24(b) and Western District of North Carolina Local Rules 6.1(e) and 7.1. Although he had previously moved to seal the exhibits, Belton reversed course and joined WBTV's motion to unseal, agreeing that the video exhibits should be made available to the public. In opposition, Loveridge argued that the district court lacked jurisdiction to consider WBTV's motion to intervene and to unseal. She further asserted that her right to a fair trial before an impartial jury outweighs any common law or First Amendment interest WBTV may have in accessing the video exhibits.

The district court denied WBTV's motion to intervene. It concluded that it lacked jurisdiction to consider WBTV's intervention motion because Loveridge had appealed the denial of her motion for summary judgment. The district court also suggested that it lacked jurisdiction to consider the motion to unseal. In the alternative, however, it addressed the

6

merits of the motion to unseal. On that motion, the district court ruled that WBTV had no right to the video exhibits under either the common law or the First Amendment and that— even if WBTV had such a right—unsealing would impede Loveridge's ability to receive a fair trial before an impartial jury. In so concluding, the district court opined that "pretrial publicity is not, in and of itself, a reason to allow access," and that WBTV failed to show why, several years after the shooting, "there would be a monumental public interest in the video exhibits." J.A. 403.[2] WBTV timely appealed the district court's ruling denying intervention and denying the motion to unseal, and that is the ruling we consider. Yet there is more to our inquiry.

## II. Analysis

Before reaching the merits, we must assure ourselves of our appellate jurisdiction. *Lee Graham Shopping Ctr., LLC v. Est. of Kirsch*, 777 F.3d 678, 680 (4th Cir. 2015). WBTV asserts three separate avenues for jurisdiction. First, WBTV contends that the district court erred in concluding that it lacked jurisdiction over the motions, and thus we necessarily have jurisdiction over its ruling on appeal. Second, WBTV argues that it has nonparty appellate standing to appeal the sealing order, and thus jurisdiction properly lies. Finally, WBTV argues, and Loveridge agrees, that this court may properly assert jurisdiction if we construe this matter as a petition for a writ of mandamus. Though we

---

[2] Citations to "J.A." refer to the Joint Appendix filed by the parties.

reject WBTV's first two avenues, we proceed down the third and construe WBTV's request as a petition for a writ of mandamus.

## A. Jurisdiction

### 1. Motion to Intervene

The district court concluded that it lacked jurisdiction to hear WBTV's motion to intervene because Loveridge had filed her notice of appeal of the district court's ruling on her motion for summary judgment before WBTV filed its motion to intervene. We affirm. That denial of the "motion to intervene is 'treated as a final judgment that is appealable.'" *Sharp Farms v. Speaks*, 917 F.3d 276, 289 (4th Cir. 2019) (quoting *Bridges v. Dep't of Md. State Police*, 441 F.3d 197, 207 (4th Cir. 2006)). "[A]n effective notice of appeal divests a district court of jurisdiction to entertain an intervention motion." *Company Doe*, 749 F.3d at 258; *Griggs v. Provident Consumer Disc. Co.*, 459 U.S. 56, 58 (1982). This remains true regardless of which party noted the appeal. *Fed. Trade Comm'n v. Lin*, 66 F.4th 164, 166–67 (4th Cir. 2023). Because Loveridge's appeal was pending before this court when WBTV filed its motion to intervene, the district court properly concluded that it lacked jurisdiction to consider that motion.[3]

---

[3] There are limited exceptions to the general rule that the filing of a notice of appeal divests the district court of jurisdiction, including "subsequent action on matters that are collateral to the appeal." *Company Doe*, 749 F.3d at 258–59. A motion to intervene is not such a collateral matter. *Cf. Langham-Hill Petroleum Inc. v. S. Fuels Co.*, 813 F.2d 1327, 1330–31 (4th Cir. 1987) (explaining that a request for attorney's fees is collateral issue); *Martin v. Shank*, 896 F.2d 1367, 1367 n.* (4th Cir. 1990) (per curiam) (concluding the same for a request for Federal Rule of Civil Procedure 11 sanctions). Advancing a rule allowing a district court to decide a motion to intervene while a notice of appeal is pending "would surely result in the 'confusion and inefficiency' that the [*Company Doe*] holding was designed to prevent." *Lin*, 66 F.4th at 167 (quoting *Company Doe*, 749 F.3d at 258).

## 2. Nonparty Appellate Standing

We next address WBTV's contention that it has nonparty appellate standing to challenge the district court's denial of the motion to unseal. "As a general rule, only named parties to the case in the district court and those permitted to intervene may appeal an adverse order or judgment." *Company Doe*, 749 F.3d at 257. This court has "recognized an exception to [this] general rule that permits a nonparty to appeal a district court's order or judgment when the appellant (1) possessed 'an interest in the cause litigated' before the district court and (2) 'participated in the proceedings actively enough to make him privy to the record.'" *Id.* at 259 (quoting *Kenny v. Quigg*, 820 F.2d 665, 668 (4th Cir. 1987)). We need not reach the first requirement because WBTV cannot satisfy the second one: WBTV did not actively participate in the district court proceedings. It did not challenge the consent motions to seal or otherwise participate until the district court ruled on Loveridge's summary judgment motion, long after the order sealing the videos had been entered. *See Company Doe*, 749 F.3d at 260. WBTV therefore cannot appeal the denial of the motion to unseal as a nonparty.

## 3. Petition for Mandamus

Finally, WBTV asks us to treat its appeal as a petition for mandamus. Mandamus relief may be granted "only when (1) petitioner 'ha[s] no other adequate means to attain the relief [it] desires'; (2) petitioner has shown a 'clear and indisputable' right to the requested relief; and (3) the court deems the writ 'appropriate under the circumstances.'"

9

*In re Murphy-Brown, LLC*, 907 F.3d 788, 795 (4th Cir. 2018) (alterations in original) (quoting *Cheney v. U.S. Dist. Ct.*, 542 U.S. 367, 380–81 (2004)).

While the granting of mandamus relief occurs only in extraordinary circumstances, it is well established that nonparties, including members of the press, may petition for a writ of mandamus in cases involving the right of access under the common law or the First Amendment. *United States ex rel. Oberg v. Nelnet, Inc.*, 105 F.4th 161, 169 & n.7 (4th Cir. 2024); *In re Wash. Post Co.*, 807 F.2d 383, 388 (4th Cir. 1986); *see United States v. Doe*, 962 F.3d 139, 144 (4th Cir. 2020). "Indeed, this court has recognized that mandamus plays an important and necessary role in protecting First Amendment freedoms." *Murphy-Brown*, 907 F.3d at 796. Thus, although WBTV has not intervened and lacks nonparty appellate standing, it may assert the public's right and the right of the press to access the video exhibits through a writ of mandamus. *See Oberg*, 105 F.4th at 169.

We may properly treat an appeal as a petition for mandamus where "the party seeking review has [Article III] standing and has substantially complied with the requirements" of Federal Rule of Appellate Procedure 21(a).[4] *In re Wash. Post*, 807 F.2d at 388. WBTV has Article III standing because it has asserted a constitutional injury that is traceable to the sealing of the video exhibits which unsealing would redress. *See Oberg*,

---

[4] Federal Rule of Appellate Procedure 21(a) requires the party to file the petition with the circuit clerk, serve a copy to the relevant parties, and provide a copy to the trial court. The petition must state the relief sought, the issues presented, facts necessary to understand the issues, the reasons why the writ must issue, and relevant portions of the record.

10

105 F.4th at 170. WBTV has also substantially complied with Rule 21(a). *Id.* Accordingly, we will treat its petition as one for a writ of mandamus.

## B. Unsealing the Video Exhibits

Next, we turn to the question of whether to grant WBTV's petition.

With respect to the first mandamus requirement—whether other adequate means of obtaining relief are available—WBTV has no other mechanism to unseal the video exhibits filed in conjunction with Loveridge's motion for summary judgment. As we have explained, the district court lacked jurisdiction to consider WBTV's motion to intervene, so WBTV may not appeal the denial of the unsealing motion as a party, and WBTV does not meet the requirements for nonparty appellate standing. The district court made abundantly clear in its alternative ruling that it would deny the motion to unseal if it had jurisdiction over it.[5] Mandamus, then, remains the only adequate means for WBTV to obtain the relief it seeks.

---

[5] We disagree with the district court's conclusion that it lacked jurisdiction to consider the motion to unseal during the pendency of Loveridge's appeal of the order denying summary judgment. Notably, WBTV could have filed its motion to unseal without first being granted intervention. Local Rule 6.1(h) of the Western District of North Carolina expressly authorizes nonparties to file a motion to unseal. Motions to unseal are the very type of "collateral" aspects of a proceeding that are not covered by the general principle that appeals divest the district court of jurisdiction. *Company Doe*, 749 F.3d at 258. Here, the motion to unseal did not implicate issues raised in Loveridge's appeal. *Id.* Because the district court considered the motion to unseal, we review the district court's alternative ruling denying that motion. *See Murphy-Brown*, 907 F.3d at 796 (The district court "already considered the legal issues surrounding the [sealing order and] Parties need not endure repeated and irreparable abridgments of their First Amendment rights simply to afford the district court a second chance").

11

We next address the second mandamus requirement: whether WBTV has established that it possesses a clear and indisputable right to the video exhibits. In ruling on the motion to unseal, the district court concluded that 1) "there is no common law or First Amendment right of access to the video exhibits," and 2) Loveridge established a compelling reason that outweighs any right of public access to these materials. J.A. 402–03. We disagree on both points.

It is "well settled that the public and press have qualified right of access to judicial documents and records filed in civil and criminal proceedings." *Company Doe*, 749 F.3d at 265.[6] "The right of public access springs from the First Amendment and the common-law tradition that court proceedings are presumptively open to public scrutiny." *Id.* The common-law right of access extends more broadly "to all judicial documents and records," and the presumptive right of access "can be rebutted only by showing that 'countervailing interests heavily outweigh the public interests in access.'" *Id.* at 266 (quoting *Rushford v. New Yorker Mag., Inc.*, 846 F.2d 249, 253 (4th Cir. 1988)).

"Unlike the common-law right, the First Amendment right of access extends only to certain judicial proceedings and records." *Oberg*, 105 F.4th at 171. The First Amendment right of access "attaches to any judicial proceeding or record '(1) that has historically been open to the press and general public; and (2) where public access plays a significant positive role in the functioning of the particular process in question.'" *Id.*

---

[6] "The rights of access of the media 'are co-extensive with and do not exceed those rights of members of the public in general.'" *Va. Dep't of State Police v. Washington Post*, 386 F.3d 567, 575 n.5 (4th Cir. 2004) (quoting *In re Greensboro News Co.*, 727 F.2d 1320, 1322 (4th Cir. 1984)).

(citation omitted); *see also Rushford*, 846 F.2d at 253 (holding that "the more rigorous First Amendment standard" applies "to documents filed in connection with a summary judgment motion in a civil case"). This includes exhibits attached to a motion for summary judgment, such as the ones in this case, which implicate the First Amendment right of access. *Company Doe*, 749 F.3d at 267. Regardless of the basis for the right of public access—the First Amendment or the common law—this right "'may be abrogated only in unusual circumstances.'" *Id.* at 266 (quoting *Stone v. Univ. of Md. Med. Sys. Corp.*, 855 F.2d 178, 182 (4th Cir. 1988)).

Having concluded that the First Amendment right of access is implicated, we next determine whether Loveridge's right to a fair trial outweighs WBTV's First Amendment right of access to the video exhibits. Certainly, the right of access "does not entitle the press and public to access in every case." *In re Wash. Post.*, 807 F.2d at 390. A district court may deny access to documents in "limited circumstances in which the right of the accused to a fair trial might be undermined by publicity . . . [where] 'closure is essential to preserve higher values and is narrowly tailored to serve that interest.'" *Press-Enter. Co. v. Superior Ct.*, 478 U.S. 1, 9–10 (1986) (*Press-Enter. II*) (quoting *Press-Enter. Co. v. Superior Ct.*, 464 U.S. 501, 510 (1984) (*Press-Enter. I*)); *see Murphy-Brown*, 907 F.3d at 797 ("'Our system of justice properly requires that civil litigants be assured the right to a fair trial.'" (quoting *Hirschkop v. Snead*, 594 F.2d 356, 373 (4th Cir. 1979) (en banc) (per curiam))). A defendant cannot rely on "conclusory assertion[s] that publicity might deprive" her of this asserted right; rather, prejudice to her right must be demonstrated with "specific findings." *Press-Enter. II*, 478 U.S. at 14–15. "[T]he First Amendment right of public

13

access is too precious to be foreclosed by conclusory assertions or unsupported speculation." *In re Providence Journal*, 293 F.3d 1, 13 (1st Cir. 2002); *see also United States v. Erie Cnty.*, 763 F.3d 235, 239 (2d Cir. 2014) (explaining that broad and general findings are insufficient to justify sealing).

Loveridge contends that her right to a fair trial outweighs the right of the public and press to access the video exhibits. This court has recognized instances where that may be true. *See Oberg*, 105 F.4th at 171 n.8; *Press-Enter. I*, 464 U.S. at 510; *Globe Newspaper Co v. Superior Ct.*, 457 U.S. 596, 606–08 (1982); *Hirschkop*, 594 F.2d at 363 ("State and federal courts have a substantial interest in assuring every person the right to a fair trial, a right which the Supreme Court has described as 'the most fundamental of all freedoms.'" (quoting *Estes v. Texas*, 381 U.S. 532, 540 (1965))). Yet the district court's sealing of all the video exhibits in their entirety was not narrowly tailored to protect Loveridge's right to a fair trial. Loveridge did not address narrow tailoring, nor did she present any evidence, reasoning, or argument as to why specifically *her* right to a fair trial would be impacted by the wholesale or partial unsealing of the videos. Loveridge's arguments before the district court were devoid of any support beyond mere summary conclusions that her right to a fair trial would be impaired.

Loveridge bears the burden of overcoming WBTV's First Amendment right of access as she is seeking to have the court suppress WBTV's First Amendment right of access. *See Va. Dep't of State Police v. Wash. Post*, 386 F.3d at 575. Because Loveridge never addressed how her right to a fair trial would be impacted—particularly in light of the fact that Belton and Loveridge both described in detail the events of the shooting in their

14

court filings and that the events of the shooting have been made public in the news—we hold that Loveridge failed to meet the high burden of demonstrating that her right to a fair trial would overcome WBTV's clear and indisputable right of access to the video exhibits.[7]

Even if Loveridge's right to a fair trial outweighed the right of the public and press to access the video exhibits, we note that a sealing determination must be accompanied by an explanation of less drastic alternatives. *See Va. Dep't of State Police*, 386 F.3d at 575; *cf. Press-Enter. I*, 464 U.S. at 510–11. In this case, there is a readily available alternative to sealing: voir dire. "Voir dire is of course the preferred safeguard against this particular threat [of pretrial publicity] to fair trial rights." *In re Charlotte Observer*, 882 F.2d 850, 855 (4th Cir. 1989). District courts are well-equipped to ensure the right of every litigant to a fair trial. High-profile cases that have been "characterized by massive pretrial media reportage and commentary, nevertheless proceeded to trial with juries which—remarkably in the eyes of many—were satisfactorily disclosed to have been unaffected (indeed, in some instances, blissfully unaware of or untouched) by that publicity." *Id*. We see no reason why voir dire in this case would not adequately protect Loveridge's right to a fair trial.

---

[7] The district court seemed to imply that WBTV bears the burden of proving that there exists a "monumental public interest" in the video exhibits to justify unsealing them. The district court pointed out that the shooting took place in 2019, the civil suit was filed in 2022, and the last media coverage by WBTV was in 2020. From this, the district court concluded that there is little current public interest in the video exhibits. We reject the suggestion that WBTV is required to meet a threshold level of public interest to assert a First Amendment right of access to the video exhibits. *See Company Doe*, 749 F.3d at 265.

The final requirement for a writ of mandamus is whether the writ is appropriate under the circumstances of the case. We conclude that it is. *See Oberg*, 105 F.4th at 174 (citing *In re Wash. Post.*, 807 F.2d at 393). Principles of public access, transparency, and the integrity of the judiciary are at stake.

## III. Conclusion

For the reasons set forth above, we affirm the district court's denial of WBTV's motion to intervene. On the motion to unseal, Loveridge bore the burden to demonstrate why her right to a fair trial justifies maintaining the seal on the video exhibits and to show why the sealing order is narrowly tailored to serve that interest. She has not met this burden. We therefore grant a writ of mandamus to vacate the order of the district court sealing the video exhibits. The sealing order violates the First Amendment right of access of both the press and the public. Accordingly, we vacate the sealing order and remand with instructions for the district court to unseal the video exhibits.

*AFFIRMED IN PART; VACATED IN PART;*

*AND REMANDED WITH INSTRUCTIONS*